THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JORDAN SCHOOL DISTRICT,<br><br>        Plaintiff/Appellant,<br><br>v.<br><br>ALICIA HADDEN, on behalf of P.H., a minor child,<br><br>        Defendant/Appellee. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:25-cv-00323-JCB<br><br><br>Magistrate Judge Jared C. Bennett |

**BACKGROUND**[1]

In September 2024, Alisha Hadden ("Ms. Hadden")[2] on behalf of a minor child, P.H. (collectively, "the Haddens"), filed a due process complaint with the Utah State Board of Education ("USBE") seeking administrative relief under the Individuals with Disabilities Education Act ("IDEA").[3] The Haddens allege that the Jordan School District ("JSD") failed to provide appropriate educational services to P.H.[4] A Hearing Officer conducted a four-day administrative hearing and agreed with the Haddens.[5]

---

[1] Under 28 U.S.C.A. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 11.

[2] The court notes the discrepancy between the spelling of Ms. Hadden's first name in the caption of this action and how Ms. Hadden spells her first name in her motion to dismiss. ECF No. 12. For obvious reasons, the court defers to Ms. Hadden's spelling of her first name.

[3] ECF No. 1 at 2, ¶ 4; see also 20 U.S.C.A. § 1400 et seq.

[4] ECF No. 1 at 2, ¶ 7.

[5] *Id.* at ¶¶ 5, 7.

The timing of the Hearing Officer's written Decision and Order is central to resolving the Haddens' motion to dismiss.[6] On the evening of March 24, 2025, the Hearing Officer emailed a Decision and Order ("Decision I") to the parties' counsel.[7] The following morning, the Hearing Officer emailed a "Corrected Order" ("Decision II") because of an error in Decision I.[8] Specifically, in Decision I the Hearing Officer mistakenly required JSD to adhere to "Alabama standards" rather than "Utah standards" in one aspect of the relief granted to P.H.[9] Decision II replaced "Alabama" with "Utah" to remedy the error in Decision I.[10] Although the Hearing Officer *emailed* Decision I to counsel on March 24 and Decision II on March 25, the Hearing Officer *signed* both orders on March 24, 2025.[11]

JSD appealed the Hearing Officer's decision to this court on April 24, 2025,[12] which is 30 days after the issuance of Decision II, but 31 days after the issuance of Decision I. The Haddens moved to dismiss JSD's appeal claiming it was one day too late and, therefore, time barred.[13] To determine whether JSD's appeal was timely filed, the court addresses: (I) which of the two Hearing Officer decisions is properly on appeal; and (II) whether JSD appealed the decision on appeal up to and including 30 days from when it was issued.

---

[6] ECF No. 12.

[7] ECF No. 1-1 at 2-3.

[8] *Id*. at 2.

[9] ECF No. 12-4 at 26, ¶ 8(b).

[10] ECF No. 1-1 at 28, ¶ 8(b).

[11] ECF No. 12-4 at 27 (Decision I); ECF No. 1-1 at 29 (Decision II).

[12] ECF No. 1.

[13] ECF No. 12.

## ANALYSIS

### I. Decision II Is the Decision on Appeal.

Decision II is the decision on appeal because it "disturbed or revised legal rights and obligations which had been plainly and properly settled with finality [in Decision I]."[14] Where, as here, a decisionmaker issues two consecutive decisions on the same subject-matter, the second decision will replace the first for purposes of appeal when the second decision "changes matters of substance, or resolves a genuine ambiguity, in [the] judgment previously rendered."[15] The test for determining whether a second decision provides a material change from the first "is a 'practical one'" where the ultimate question is "whether the 'second order has disturbed or revised legal rights.'"[16]

At first glance, substituting "Utah" in Decision II for "Alabama" in Decision I appears to remedy an obvious mistake that does not substantively affect the legal rights and obligations of the parties. After all, everyone should know, the Haddens argue, that the Hearing Officer meant "Utah" instead of "Alabama," and that even if the mistake was never corrected, a Utah school district would not look to Alabama standards when crafting educational services for one of its students. Instead of proving the Haddens' point, however, this argument shows why the change from "Alabama" to "Utah" in Decision II is material.

---

[14] *Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 212 (1952) (citation modified)

[15] *Id.* at 211 (footnotes omitted).

[16] *Linin v. Neff*, No. 17-4158, 2019 WL 13213358, at *3 (10th Cir. Feb. 5, 2019) (unpublished) (citation modified) (quoting *Minneapolis-Honeywell Regul. Co.*, 344 U.S. at 212).

Consider what would happen if the Haddens' argument were valid. Legal chaos would ensue if litigants who are subject to an adverse ruling were simply free to ignore language in a court order that an aggrieved party self-servingly classifies as an "obvious mistake." Ignoring an order—even one subject to an "obvious" error—is not a viable legal option. Instead, the remedy is to seek reconsideration or to appeal the erroneous decision. And absent a court-ordered change, the aggrieved party remains bound to comply with a decision that contains even an obvious error.

The Hearing Officer's substitution of "Utah" for "Alabama" in Decision II is a material change because it removed an appealable issue for JSD and altered the remedy awarded to the Haddens. If the mistaken text from Decision I were never replaced, JSD would not be free to simply ignore the Hearing Officer's Decision and Order. Instead, the remedy in that situation would be for JSD to appeal the Hearing Officer's obvious error. Staying with the Hearing Officer's Decision I remedy would have given the Haddens a remedy to which they were not entitled. Thus, changing "Alabama" to "Utah" had a material impact on an issue that either JSD or the Haddens could have appealed had it not been corrected *sua sponte* by the Hearing Officer in Decision II. This material change means that Decision II is the decision on appeal to this court.

## II. The Date Decision II Was Disseminated Is the Date the Decision Was Issued.

Having determined that Decision II is the decision on appeal, the court applies Utah law to determine the appeal deadline because the IDEA specifically defers to Utah law on this issue. Under the IDEA, a party seeking to appeal the findings and decision made pursuant to an IDEA due process hearing may do so within 90 days unless operative state law provides an explicit

time limitation.[17] Utah law contains such a limitation and requires a party challenging an IDEA due process hearing decision to file its appeal "within 30 days after the day on which the due process hearing decision was *issued*."[18]

The Utah Supreme Court has clarified when "issuance" occurs. "To trigger a right of appeal, an order must have 'issued'—meaning that the decisionmaking body must not only have completed its work and signed off on its decision, but also have undertaken steps to communicate or disseminate the decision to the public."[19] Thus, public dissemination is the touchstone for when a decision is "issued."

Although Decision II was dated March 24, it was not publicly disseminated until March 25, 2025. This step to "disseminate the decision to the public" opened the appeal window.[20] That window remained open for 30 days and closed at the expiration of the last second of April 24, 2025.[21] JSD filed its appeal before the last second of April 24, 2025, and, therefore, JSD timely filed its appeal. Accordingly, the Haddens' motion to dismiss[22] is DENIED.

---

[17] 20 U.S.C. § 1415(i)(2)(A)-(B).

[18] Utah Code Ann. § 53E-7-208(4)(a) (2025) (emphasis added).

[19] *Perez v. S. Jordan City*, 296 P.3d 715, 718 (Utah 2013).

[20] *Id.*

[21] Utah Code Ann. § 53E-7-208(4)(a) (2025).

[22] ECF No. 12.

5

IT IS SO ORDERED.

DATED this 20th day of October 2025.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge